IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BYRON TRIBUE, et al.,

    Plaintiffs,

v.

                                Civil No. 22-2732-BAH

STATE OF MARYLAND, et al.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Byron Tribue ("Tribue"), Matin Dunlap ("Dunlap"), and Analisse Diaz ("Diaz") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, brought this lawsuit against Defendants the State of Maryland, Colonel Roland L. Butler, Jr. ("Butler"), Colonel William M. Pallozzi ("Pallozzi"), James E. Hock, Jr. ("Hock"), and Colonel Woodrow W. Jones III ("Jones") (collectively "Defendants") alleging employment discrimination based on race. ECF 1. Plaintiffs subsequently filed an amended complaint. ECF 23. Defendants now move to dismiss the amended complaint or, in the alternative, for summary judgment.[1] ECF 27. Plaintiffs filed a response in opposition, ECF 32, and Defendants filed a reply, ECF 38.[2] All filings

---

[1] Defendants clarified that the scope of their alternative motion for summary judgment is narrow, explaining in their reply that "Defendants' Motion is a Motion to Dismiss against all claims and, alternatively, a Motion for Summary Judgment only as it relates to claims made by Sgt. Tribue that would survive dismissal." ECF 38, at 2–3. Regardless, the motion is styled as one for dismissal or, in the alternative, for summary judgment. See ECF 27.

[2] Plaintiffs also filed a motion to for leave to file a surreply, ECF 43, which Defendants opposed, ECF 44. Parties may not file a surreply without leave of the Court. Loc. R. 105.2(a). "Though disfavored, surreplies 'may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.'" *Pedersen v. Geschwind*, 141 F. Supp. 3d 405, 410 (D. Md. 2015) (quoting *Khoury. Meserve*, 268 F. Supp. 2d 600, 605 (D.

include memoranda of law and exhibits.[3] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

I. **BACKGROUND**[4]

Plaintiffs are all current or former uniformed officers with the Maryland State Police ("MSP"). They allege MSP engaged in racially discriminatory behavior against them as individuals as well as against other similarly situated officers of color. ECF 23, at 2–4.

*A. Officer Tribue*

Plaintiff Tribue is an officer with MSP who is Black. He has been employed with MSP since February 1, 2010 and currently serves as a Sergeant. ECF 23, at 17 ¶ 74. Sgt. Tribue has won a number of awards for his service, including the Non-Commissioned Officer of the year for

---

Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (per curiam)). Plaintiffs seek leave to file a surreply primarily to respond to a point made by Defendants directly in response to an argument initially raised by Plaintiffs in their opposition. *See* ECF 43, at 2 ¶ 7. This is not the proper purpose of a surreply. *See Khoury*, 268 F. Supp. 2d. at 606 (denying leave to file a surreply when the argumetns the plaintiff sought to address in the defendant's reply were in response to "matter[s] first introduced by Plaintiff"). As such, Plaintiffs' motion for leave to file a surreply, ECF 43, is **DENIED**.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[4] In evaluating a motion to dismiss, the Court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). "Indeed, a court cannot 'favor[ ] its perception of the relevant events over the narrative offered by the complaint,' thereby 'recasting 'plausibility' into 'probability.''" *Id.* (quoting *SD3, LLC*, 801 F. 3d at 430). Accordingly, for purposes of evaluating the motion to dismiss, the Court accepts as true the facts alleged in the amended complaint and summarizes them in this section.

2

the Forestville, MD barrack in 2018 and again in 2022. *Id.* at 25 ¶ 111. Tribue has also ranked highly on employment promotion lists for multiple years. *Id.* at 18 ¶¶ 74 & 75.

Tribue reports that he is outspoken about instances of discrimination he has witnessed within MSP. ECF 23, at 18 ¶ 76. In particular, he notes reports he made in late 2019 about the conduct of Detective Sergeant Christopher Bowling, whom, Tribue reports, gave more overtime shift opportunities "to his Caucasian officer friends" outside his barracks than to officers of color stationed within. *Id.* ¶ 78. Tribue made a similar complaint against Bowling on January 28, 2020. *Id.* ¶ 79.

On February 13, 2020, MSP suspended Tribue for allegedly misrepresenting an hour on his time sheet, despite Tribue's claims that he had more than sufficient earned annual leave to cover this hour of time. ECF 23, at 19 ¶ 80. Tribue reports that MSP construed this alleged misrepresentation as theft and false reporting and that Tribue was required to undergo a public removal of his belongings from his official vehicle, which he describes as "humiliate[ing]." *Id.* at 20 ¶ 84. Though Tribue's supervisor confirmed he "had not engaged in misconduct regarding his time sheet incident," MSP continued his suspension and appointed Bowling to investigate his case. *Id.* ¶¶ 85 & 86.

MSP continued the investigation for seven months and ultimately charged Tribue with "two counts of neglect of duty," one count of "unauthorized secondary employment," and one count of "conduct unbecoming." ECF 23, at 21 ¶ 89. Tribue continued to deny the allegations. *Id.* ¶ 90. Though each charge was relatively minor, with MSP's formal disciplinary matrix imposing no more than a suspension without pay for up to eight days and a fine of $450, MSP proposed that Tribue should be issued a suspension of thirty days without pay and a demotion from Corporal to Trooper First Class, which Tribue notes is a "non-supervisory position." *Id.* at 22 ¶

3

91. Ultimately, the MSP Trial Board declined to issue this punishment but still imposed a suspension of ten days without pay, which Tribue alleges is more than any Caucasian officer had ever received for similar conduct. *Id.* at 24 ¶¶ 106–109. Moreover, while Tribue was eligible for reinstatement once the investigation concluded on, or shortly after, September 28, 2020, MSP initially refused to reinstate him. *Id.* ¶¶ 96 & 97.

In response to the events chronicled above, the President of the National Association for the Advancement of Colored People ("NAACP") of Prince George's County, Maryland wrote to the MSP on Tribue's behalf. ECF 23, at 22 ¶ 98. Only then, Tribue alleges, did MSP agree to Tribue's reinstatement, though they delayed processing the necessary paperwork until December 10, 2020, at which time Tribue had been suspended for over three hundred days. *Id.* at 23 ¶¶ 99–102. As a result of this lengthy suspension, Tribue lost substantial income from both his primary job as an officer as well as from his secondary employment as a security guard. *Id.* at 23 & 24 ¶¶ 104 & 106. Tribue also reports that the allegation and subsequent investigation unduly delayed his ability to be promoted to Sergeant. *Id.* at 24 ¶ 110. Tribue further alleges that Caucasian officers facing suspension were not subjected to the same procedural delays he was when those officers, like Tribue, were up for promotions. *Id.* at 26 ¶ 118.

B. *Officer Dunlap*

Plaintiff Dunlap is an MSP officer who is Black and alleges discretionary, harassing, and retaliatory treatment based on his race. ECF 23, at 28 ¶ 132. In particular, he reports that a Caucasian officer placed a banana on his windshield, "one of the most noxious and dehumanizing stereotypes against Black people." *Id.* ¶ 133. MSP did not take any disciplinary action against the offending officer but, Dunlap alleges, continually promoted the offending officer. *Id.* at 29 ¶ 135. However, Dunlap alleges that after he filed a complaint about the incident, MSP chose to reopen

4

a closed complaint which accused Dunlap of misconduct during a traffic stop. *Id.* ¶ 136. Dunlap alleges that he had been cleared of any wrongdoing related to that incident and "[r]e-opening such an old, closed complaint violated MSP policy." *Id.* Dunlap claims that MSP escalated the investigation, placed Dunlap on an unpaid suspension, and ultimately charged him criminally for the same alleged misconduct that he had already been cleared of. *Id.* ¶ 137.

Dunlap reports the allegations against him were never substantiated and alleges that while he ultimately returned to work, he was continually denied assignments to "Specialized Units." *Id.* ¶ 138. He alleges that MSP prefers less qualified Caucasian candidates for these roles ahead of himself. *Id.* at 30 ¶ 139.

C. *Officer Diaz*

Plaintiff Diaz is an MSP officer who is Black and Puerto Rican. ECF 23, at 30 ¶ 143. Diaz served as a State Trooper from January 2012 until her termination on October 24, 2019. *Id.* ¶ 144. Diaz alleges that throughout her employment, she faced a work environment where racist remarks were normal and tolerated. Id. at 30-31 ¶ 144. In particular, Diaz singles out an occasion on which she was told it was a not a "big deal" to use racial slurs at work, and another where a fellow officer told her that "MSP should hire her as cleaning staff," which she interpreted as meaning she was "more suited for janitorial work than work as an MSP officer because she was Hispanic." *Id.* at 31 ¶ 145.

Moreover, Diaz alleges multiple instances of disparate treatment compared to similarly situated Caucasian officers. In one instance, she reports that she was overlooked in favor of less qualified Caucasian candidates for assignment and further reports that her supervisor, Sergeant David Hooper, openly stated his belief that such opportunities should be reserved for the Caucasian officers. ECF 23, at 31 ¶ 147. Though she was ultimately offered an opportunity to participate in

5

prestigious, specialized training initiatives, Diaz further reports that Hooper began retaliating against her after her selection by writing her up for alleged poor performance because Hooper "did not believe [] Diaz was qualified nor deserved to attend the training opportunity." *Id.* ¶ 148. Diaz claims that Hooper did not "do[] the same to Caucasian officers." *Id.* ¶ 149. Diaz also alleges that this retaliation escalated to the point where she received a poor performance review for "poor monthly statistics," though Caucasian troopers who had "similar monthly statistics did not receive poor performance reviews." *Id.* at 31 ¶ 150.

When Diaz appealed her poor review, MSP placed her "on a PIP,"[5] suspended her overtime privileges, and began scrutinizing her work, all actions that were not taken against Caucasian officers who with similar reviews. ECF 23, at 32 ¶ 151. "In January [of] 2018," Diaz alleges she was referred to the Internal Affairs Department "for discipline." *Id.* In response, Diaz made a discrimination complaint to the Office of Fair Practice ("OFP"), though OFP ultimately found no probable cause to support her allegations of discrimination. *Id.* ¶ 153. Meanwhile, however, MSP referred Diaz to the Internal Affairs Department and suspended her while the OFP investigation was ongoing. *Id.* ¶ 152. Upon conclusion of OFP's investigation, the Internal Affairs Department proposed terminating Diaz, though it reportedly does not suggest terminations of Caucasian officers for the same minor mistakes that Diaz was accused of making. *Id.* ¶ 154.

In addition to their individual experiences, Plaintiffs allege that MSP has disproportionately fewer officers of color within multiple ranks, and that such a disparity is especially egregious considering the demographics of Maryland as a whole compared to the demographics of MSP. ECF 23, at 11 ¶ 39. Moreover, Plaintiffs report that MSP systematically

---

[5] Though not spelled out in the amended complaint, the Court assumes the reference to a "PIP" in this context means that Diaz was placed on a Performance Improvement Plan.

denies promotions to officers of color in a manner that cannot be explained by other race-neutral factors such as differential performance or experience. *Id.* at 12 ¶ 40. According to the Plaintiffs, MSP engages in similar discrimination against officers of color as it relates to placement in Specialized Units. *Id.* at 13 ¶ 48.

Plaintiffs allege that racially based harassment was widespread within the MSP. Such practices, Plaintiffs claim, included "using a paper training dummy at a MSP shooting range with a black face and 'Afro wig' for officers to shoot at" and "sharing via text a racist, vulgar, highly offensive meme barely a week after George Floyd's murder." ECF 23, at 16 ¶¶ 64 & 65. Plaintiffs allege that MSP declined to take action against the Caucasian officer who shared the offensive meme despite knowledge of the offensive nature of what was shared. *Id.* ¶ 66.

Plaintiffs also allege that MSP often retaliates against officers who have reported misconduct. ECF 23, at 15 ¶ 60. Plaintiffs allege that MSP's own internal data show that officers of color are disciplined at a higher rate and more severely than their Caucasian colleagues. *Id.* ¶ 61.

On October 24, 2022, Plaintiffs filed their initial complaint, in which they named only the State of Maryland as a defendant and brought only the two claims under 42 U.S.C. § 1983 alleging violations of their First and Fourteenth Amendment rights. ECF 1, at 30–34 ¶¶ 134–150. Nearly a year later, on October 16, 2023, Plaintiffs filed the amended complaint bringing claims against all five Defendants and adding the state law and Title VII claims. ECF 23, at 40–52 ¶¶ 195–257.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S.

7

662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

In evaluating a motion to dismiss, "the Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference." *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 450 (D. Md. 2019) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 330–31 (S.D.N.Y.2003)). Here, the Court considers Tribue's November 2021 EEOC charge as well as Tribue's August 2022 supplement to the charge, both of which are attached to Plaintiffs' opposition to Defendant's motion to dismiss, as both were explicitly referenced in Plaintiffs' amended complaint and are essential to Plaintiffs' claims. *See* ECF 32-5, at 2–6 (showing November 2021 EEOC charge); ECF 32-7, at 2–10 (showing August 2022 supplement to EEOC

charge); ECF 23, at 5 ¶ 4 ("Plaintiff Tribue timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission . . . . Plaintiff Tribue filed a supplement to his initial Charge of Discrimination on August 12, 2022); *see also Hill v. Jamestown-Yorktown Found.*, Civ. No. 18-137, 2019 WL 3084242, at *2 n.2 (E.D. Va. July 15, 2019) ("[A]lthough they were not attached to the Amended Complaint, the Court finds it appropriate to consider the EEOC charges attached to the parties' briefing because the charges were incorporated by reference in the Amended Complaint, and are 'integral to the administrative history of a subsequent civil discrimination complaint[.]'" (citation omitted)); *Crew v. Nature's Variety, Inc.*, Civ. No. 22-00380, 2022 WL 4234266 (W.D. Va. Sept. 14, 2022) ("[The plaintiff] expressly references his EEOC charge in the complaint by alleging that he filed an EEOC charge and was issued a Notice of Right to Sue." (citation omitted)).

Finally, when presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Defendants have filed a "motion to dismiss or in the alternative motion for summary judgment." ECF 27, at 1. Rather than a traditional motion to dismiss or, in the alternative, for summary judgment, however, Defendants assert that their motion is a "Motion to Dismiss against all claims and, alternatively, a Motion for Summary Judgment only as it relates to claims made by Sgt. Tribue that would survive dismissal." ECF 38, at 2–3. The Court exercises its discretion to

9

decline to convert this motion into one for summary judgment for any of the claims currently before it. *See Pevia*, 443 F. Supp 3d at 625. The parties have not had a chance to conduct discovery, and the Court finds that it would be premature to evaluate whether summary judgment should be granted. As such, Defendants' motion will be considered solely as a motion to dismiss.

## III. ANALYSIS

Defendant moves to dismiss Plaintiffs' amended complaint for failure to state a claim. ECF 27. Defendants' arguments are many, but can be distilled into three broad categories: (1) the allegations against the individual Defendants are not sufficient to plead liability,[6] (2) Dunlap's claims are not exhausted, and so his Title VII claims and state law claims must fail, and (3) Plaintiffs fail to plead or sufficient facts, in the case of Dunlap, or establish such facts, in the case of Tribue, to support a claim of race-based discrimination or retaliation. ECF 27-2, at 14–34. The Court will address each of these arguments in turn.

### A. Individual Defendants

Defendants argue that the claims brought against the individual Defendants pursuant to § 1983 must be dismissed because Plaintiffs "have not asserted any actual wrongdoing against the four individual Defendants. . . . [and] have also failed to allege supervisory liability against the four individual Defendants." ECF 27-2, at 29. Plaintiffs argue that the amended complaint pleads sufficient facts to hold the individual Defendants liable.[7] ECF 32, at 20–27.

---

[6] Defendants also argue that Dunlap's and Diaz's § 1983 claims are barred by the statute of limitations and that the individual Defendants are entitled to qualified immunity. ECF 27-2, at 24–25, 27–28, 32–34. Because the Court finds that Plaintiffs failed to plead supervisory liability on their § 1983 claims, as explained below, the Court need not reach these arguments.

[7] Plaintiffs attempt to argue that, separate from supervisory liability, "[a]llegations that an individual defendant 'ratified the conduct' is sufficient pleading of an action taken." *See* ECF 32, at 20. In support, Plaintiffs cite to two cases discussing *qualified immunity*, not whether a plaintiff has stated a plausible claim of supervisory liability. *See* ECF 32, at 20 (citing to *Bennett v. N. Carolina Dep't of Transp.*, No. 1:05CV0764, 2007 WL 4208390, at *6 (M.D.N.C. Nov. 26, 2007)

For § 1983 claims, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, any such "liability is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir.1984)). Supervisory liability under § 1983 attaches only when a plaintiff can establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Randall v. Prince George's Cnty.*, 302 F.3d 188, 206 (4th Cir. 2002) (citing *Shaw*, 13 F.3d at 799) (internal quotation marks omitted).

Here, Plaintiffs have alleged that the individual Defendants worked "in a supervisory capacity" and were

> aware of, and deliberately indifferent to, multiple instances of discrimination in violation of Plaintiffs' constitutional rights. In addition to awareness of conduct that interfered with individual Plaintiffs' constitutional rights, Defendant[s] [were] aware of publicized events of mass discrimination[8] . . . and failed to properly

---

and *Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442 at *11 (S.D.W. Va. Sept. 27, 2016)). The analysis for whether a complaint has stated a claim for relief is separate from that of qualified immunity, and that a supervisor could, in some circumstances, be liable for "ratifying" conduct is exactly the premise of the doctrine of supervisory liability.

[8] Plaintiffs reference a Department of Justice ("DOJ") investigation into "race discrimination" by MSP as providing notice to the individual Defendants of discriminatory practices by subordinates. ECF 32, at 24. However, it is unclear how this investigation could have provided notice to the individual Defendants of discrimination before the specific events Plaintiffs complain of, the latest of which occurred in 2021, when the investigation was announced well after that date. *See* ECF 23, at 9 ¶ 29 ("On *July 15, 2022*, the United States Department of Justice announced that 'it has

> respond within [their] supervisory capacity. Defendant[s'] inaction allowed for the continued discrimination towards Officers of Color.

ECF 23, at 6–7 ¶¶ 18–21. These broad conclusory assertions mirroring the legal standard for supervisory liability cannot suffice to plead supervisory liability. *See Swaso*, 698 F. App'x at 747 ("The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" (citation omitted)). Plaintiffs further assert that the individual Defendants were in a supervisory position over Plaintiffs (and over those who discriminated against Plaintiffs) and were involved in committees that managed and oversaw certain aspects of MSP, such as discipline. *See, e.g.*, ECF 23, at 7 ¶ 20 ("As the Chief of Staff, [Defendant Hock] serves as the Chair of the Penalty Assessment Review Committee (PARC). At all relevant times, Defendant Hock worked in a supervisory capacity over Plaintiffs and the other individuals named in this Complaint."). These allegations amount to nothing more than an assertion that the individual Defendants were indeed the supervisors of the relevant actors, but that is not enough to establish supervisory liability. There are no allegations regarding the actual actions (or inaction) of any of the individual Defendants other than conclusory statements, and this is simply not enough

---

opened a civil pattern or practice investigation into the Maryland Department of State Police . . . under Title VII of the Civil Rights Act of 1964' regarding whether the MSP has engaged in racially discriminatory hiring and promotion practices." (emphasis added)). The amended complaint also notes comments from the Maryland General Assembly expressing concerns over employment discrimination at MSP. *See id.* at 10 ¶ 34. While the amended complaint appears to quote from a source affiliated with the Maryland General Assembly in making its allegations on this point, it does not identify that source, nor does it state when these comments were made. Nevertheless, the Court takes judicial notice that the Maryland General Assembly expressed such concerns during the 2021 legislative session, which would have been after Tribue was already reinstated by MSP. *See Office of Equity & Inclusion Comminqué*, Maryland State Police, 3 (Jan. 2023), https://mdsp.maryland.gov/Document%20Downloads/OEI%20Newsletter_%20Jan%20(1).pdf ("During the 2021 session, the Maryland General Assembly expressed concerns about racial insensitivity and lack of diversity among the Maryland Department of State Police (MDSP) workforce. This language directed MDSP to develop a diversity study group to develop an action plan to address these concerns and produce findings.").

12

to plead supervisory liability. As such, Plaintiffs have failed to state a claim against the individual Defendants and their § 1983 claims against them must be dismissed.

## B.   Exhaustion

The Court next turns to the question of exhaustion. An employee must exhaust administrative remedies by filing an EEOC charge before filing a civil action in federal court under Title VII.[9] *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 438 (D. Md. 2013). The Maryland Human Relations Act, Md.Code Ann., State Gov't, § 20–601, et seq. ("MHRA ") also requires the exhaustion of administrative remedies before a plaintiff may file suit. *Cuffee v. Verizon Commc'ns, Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010) ("[L]ike Title VII, the MHRA [] require[s] that would-be plaintiffs first file a charge of discrimination with an enforcement agency.").

Defendants appear to concede that Plaintiff Tribue has pled that he has administratively exhausted his Title VII and MHRA claims through the filing of his initial EEOC charge and his supplement thereto. *See* ECF 27-2, at 14–32 (failing to raise any challenge to Tribue's exhaustion, despite raising exhaustion as an issue with respect to Dunlap). Instead, Defendants assert only that Dunlap's Title VII and MHRA claims should be dismissed for failure to exhaust. *Id.* at 26–27.

---

[9] In *Fort Bend County, Texas v. Davis*, the Supreme Court clarified that failure to exhaust administrative remedies during the EEOC process does not affect the Court's jurisdiction over a Title VII claim. 587 U.S. 541, 550 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast."). Rather, Title VII's requirement to exhaust administrative remedies is a prerequisite to filing suit in this Court. *See id.* at 551. ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one . . . ."). "The Court possesses subject-matter jurisdiction to consider discrimination claims that have been brought under Title VII, even if those claims have not been properly raised during the EEOC process." *Knott v. McDonalds Corp.*, Civ. No. 21-00592-LKG, 2021 WL 5015750, at *5 (D. Md. Oct. 28, 2021) (citing *Fort Bend Cnty.*, 587 U.S. at 550). Thus, the Court considers Defendant's motion to dismiss only under the Rule 12(b)(6) standard.

13

Indeed, nowhere in Plaintiffs' amended complaint do Plaintiffs' mention any administrative filings by Dunlap, and Plaintiffs appear to concede that Dunlap made no such filings. *See* ECF 23, at 5 ¶¶ 9–11 (making no mention of Dunlap under section entitled "Exhaustion of Administrative Remedies"); ECF 32 at 15 (arguing that Dunlap should be permitted to "piggyback" on Tribue's EEOC charge). Plaintiffs rely instead on the "single-filing rule," often referred to as "piggybacking." ECF 32, at 15. This doctrine "permits intervenors in discrimination suits to rely upon the original plaintiff's EEOC charge rather than requiring each to file an individual EEOC charge" and "has been 'long applied' in the Fourth Circuit to class actions." *Barkhorn v. Ports Am. Chesapeake, LLC*, Civ. No. JKB-10-750, 2011 WL 4479694, at *5 (D. Md. Sept. 26, 2011) (citing *Chisholm v. U.S. Postal Service*, 665 F.2d 482, 490 n. 11 (4th Cir. 1981)). This Court has previously found that the single-filing rule applies for individual plaintiffs outside of the class action context, as well. *See id.* (applying the requirements of the single-filing rule to consider whether several named plaintiffs could "piggyback" off of one plaintiff's EEOC filing and determining that the rule so allowed). As such, if Plaintiffs have pled that Dunlap meets the requirements of the single-filing rule, his claims will be exhausted by virtue of "piggybacking."

In order for a plaintiff to take advantage of the single-filing rule, "all plaintiffs' claims [must be] substantially similar and [] the EEOC charge itself [must give] notice of the charge's collective nature." *White v. BFI Waste Services, LLC*, 375 F.3d 288, 293 (4th Cir. 2004). Here, Tribue's initial EEOC charge pertains exclusively to the specific instance of disparate discipline that led to his suspension in 2020. ECF 32-5, at 2. The supplement to his EEOC charge, however, echoes many of the facts outlined in the amended complaint, including that Tribue had "observed many instances of discrimination against officers of color" and that Tribue believed that he, "along

with other Black troopers[,] lost out on overtime opportunities and the overtime pay" as compared with Caucasian officers due to discriminatory practices. ECF 32-7, at 3. The supplement goes on to provide more details regarding Tribue's allegations of discriminatory discipline and retaliation. *See* ECF 32-7, at 3–10.

Tribue's claims in the EEOC charge are certainly related to Dunlap's claims here, but they are not identical. Thus, the question is whether those claims are *similar enough* to permit the application of the single-filing rule. Tribue's EEOC charge details disparate discipline, retaliation, and other alleged adverse actions such as delayed promotional opportunities and denial of overtime opportunities. ECF 32-7, at 3–10. Dunlap's claims in the amended complaint contain allegations of a hostile work environment, retaliation, disparate discipline, and failure to assign him to a Specialized Unit. ECF 23, at 28–30 ¶¶ 132–141. The EEOC complaint fails to include any allegations relating to a hostile work environment. *See* ECF 32-7, at 3–10. Thus, any hostile work environment claim is not substantially similar to the ones listed in Tribue's EEOC charge. *See, e.g., Ezell v. Mobile Hous. Bd.*, 709 F.2d 1376, 1381 (11th Cir. 1983) (finding that claims were not substantially similar for purposes of the single filing rule when one claim was based on discriminatory discharge and one was based on discriminatory testing in employment). However, Dunlap's allegations of retaliation, reduced promotional opportunities, and disparate discipline closely mirror those in the EEOC charge, with both Dunlap and Tribue alleging involving disparate disciplinary measures for relatively minor infractions and denials of career opportunities after reporting discriminatory behavior. *See* ECF 23, at 28–30 ¶¶ 132–141; ECF 32-7, at 3–10. As such, these claims are substantially similar for purposes of the single-filing rule at the motion to dismiss stage.

The Court next considers whether the EEOC charge gave adequate notice to Defendants of the "collective nature" of the allegations. *White,* 375 F.3d at 293. The EEOC charge makes repeated references to the alleged fact that Tribue was not the only person at MSP who allegedly faced discrimination at the hands of Defendants. In his supplement to the charge, Tribue stated as much by noting his belief "that the Maryland State Police have fostered a culture that systemically breeds a racially discriminatory environment." ECF 32-7, at 10. He also reported that the NAACP had written to MSP "regarding the disparate discipline and promotions that Black troopers at the Forestville Barrack faced, including Tribue," *id.* at 6, and he lodged broad allegations of discriminatory discipline, *id.* at 4 ("Based on my observations and experience, if an officer of color had done something similar, they would face serious disciplinary action."). Tribue also indicated that he had "observed many instances of discrimination against officers of color." *Id.* at 3. These statements are more than enough to put Defendants on notice of the potential collective nature of the allegations. *See Howlett v. Holiday Inns, Inc.,* 49 F.3d 189, 196 (6th Cir. 1995) (finding EEOC charge was sufficient for notice of potential collective action for purposes of single-filing rule when charge referenced "others similarly situated" and made broad reference to "many employees"). Dunlap's claims of retaliation and disparate discipline will be permitted to "piggyback" on Tribue's EEOC charge.

C.    **Title VII Analysis**

Employment discrimination and retaliation claims brought pursuant to the MHRA are analyzed under to the same standards as those used for claims brought pursuant to Title VII. *See Williams v. Silver Spring Volunteer Fire Dep't,* 86 F. Supp. 3d 398, 419 (D. Md. 2015) (citing *Chappell v. S. Md. Hosp.,* 320 Md. 483, 578 A.2d 766 (1990) for the proposition that "because the MHRA tracks the language of Title VII, the same criteria apply in analyzing retaliation claims

16

under either statute"). As such, the Court will analyze the substance of Plaintiffs' remaining claims together.

Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2 (a); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013); *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, she may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, Civ. No. 21-1181, 2022 WL 16630570, *1 (4th Cir. Nov. 2, 2022). "Pursuant to the *McDonnell Douglas* standard, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination." *Conway v. Kijakazi*, Civ. No. 21-00502, 2023 WL 5153641, at *5 (D. Md. Aug. 10, 2023) (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981)). Though a plaintiff need not establish a prima facie case at the motion to dismiss stage, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, Civ. No. 22-01900-ELH, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023). In the amended complaint, Plaintiffs allege both discrimination and retaliation claims. ECF 23, at 40–52 ¶¶ 195–257.

Defendants do not appear to argue at any point in their motion that Tribue has failed to state a claim for discrimination or retaliation under Title VII. Rather, they argue that he has "failed to establish" those claims. *See* ECF 27-2, at 14. But as the Court has already determined to consider this motion solely as a motion to dismiss and not one for summary judgment, this argument is moot as the question of "establishing" a claim is not yet before the Court.

Furthermore, Defendants appear to concede that Tribue has adequately stated claims for both discrimination and retaliation in the amended complaint by referring to their motion as one for dismissal "and, alternatively, a Motion for Summary Judgment only as it relates to claims made by Sgt. Tribue that would survive dismissal." ECF 38, at 3.

Regardless, the Court finds that Tribue has alleged sufficient facts to state a claim for discrimination and retaliation. At a minimum, the amended complaint alleges that (1) Tribue is a member of a protected class (Black) and was subject to greater disciplinary measures than his Caucasian counterparts with comparable infractions and (2) Tribue complained about discrimination and was shortly thereafter subject to disproportionate punishment for a comparably minor infraction. *See* ECF 23, at 17–28 ¶¶ 72–131. This is sufficient at this stage to state a claim for discrimination and retaliation under Title VII. *See, e.g., Mahomes v. Potter*, 590 F. Supp. 2d 775, 781 (D.S.C. 2008) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)) (explaining that in order to make out a prima facie case of discrimination via comparator evidence, a plaintiff must show: (1) they are a member of a protected class; (2) the prohibited conduct in which they engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against them were more severe than those enforced against those other employees); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005) (explaining that a plaintiff must satisfy three elements to establish a prima facie retaliation case: "(1) that [they] engaged in a protected activity; (2) that [their] employer took an adverse employment action against [them]; and (3) that there was a causal link between the two events"); *see also Strothers*, 895 F.3d at 336 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)) (noting that that temporal proximity can support causation).

Defendants raise a single substantive argument as to why Dunlap has failed to state a claim under Title VII, namely that his denial of a transfer to a specialized unit does not amount to an adverse employment action. ECF 27-2, at 28–29. Defendants do not challenge the sufficiency of Dunlap's allegations regarding disparate discipline, which arguably alone support Dunlap's claims of discrimination and retaliation, as explained above with respect to Tribue. Still, the Court will address the question of whether the denials of placement in a specialized unit, as alleged, could constitute an adverse action.

In April of this year, after this motion had already been fully briefed, the Supreme Court clarified what exactly constitutes an adverse action in the Title VII context in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). In *Muldrow*, the Supreme Court explained that, with respect to the plaintiff's argument that a transfer was an adverse action:

> To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment.
>
> What the transferee does not have to show, according to the relevant text, is that the harm incurred was "significant." Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar. "Discriminate against" means treat worse . . . . But neither that phrase nor any other says anything about how much worse. There is nothing in the provision to distinguish . . . between transfers causing significant disadvantages and transfers causing not-so-significant ones. And there is nothing to otherwise establish an elevated threshold of harm. To demand "significance" is to add words—and significant words, as it were—to the statute Congress enacted. It is to impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written.

601 U.S. at 354–55 (internal citations omitted). Guided by *Muldrow*, the Court finds that to the extent that, as Defendants assert, the denial of assignment to a specialized unit should be considered a denial of a transfer, Dunlap has adequately pled it was an adverse action. Therefore, Dunlap has successfully stated a claim for both discrimination and retaliation. As such, Dunlap's and Tribue's Title VII and MHRA claims survive Defendants' motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF 27, is **GRANTED in part and DENIED in part**. Counts one through four of the amended complaint survive but counts five and six are **DISMISSSED** without prejudice.

A separate implementing Order will issue.

Dated: September 13, 2024

/s/
Brendan A. Hurson
United States District Judge