## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BYRON TRIBUE ET AL., | * |
| Plaintiffs, | * |
|  | * |
| v. | * |
|  | Civil No. 22-2732-BAH |
| STATE OF MARYLAND ET AL., | * |
| Defendants. | * |
|  | * |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

Plaintiffs Byron Tribue ("Tribue"), Matin Dunlap ("Dunlap"), and Analisse Diaz ("Diaz") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, brought this lawsuit against Defendants the State of Maryland (the "State"), Colonel Roland L. Butler, Jr., Colonel William M. Pallozzi, James E. Hock, Jr., and Colonel Woodrow W. Jones III (together, the "Individual Defendants")[1] alleging employment discrimination based on race.  ECF 23 (amended complaint).[2]  Three motions are pending before the Court.  The first is Plaintiffs' "final" motion to amend or correct the first amended complaint, ECF 99, along with a motion for leave to file excess pages, ECF 100.  The State opposes the motion to amend, ECF 104, and Plaintiffs have filed a reply, ECF 107.  The other pending motion is the State's motion to modify the operative scheduling order, ECF 114, which Plaintiffs partially contest, ECF 116.  The State has also filed a

---

[1] The claims asserted against the Individual Defendants were previously dismissed without prejudice in the Court's prior ruling on the motion to dismiss. *See* ECF 51 (memorandum opinion); ECF 52 (order).

[2] The original complaint is docketed at ECF 1.

reply.[3] ECF 117. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, the State's motion to modify the scheduling order is **GRANTED in part and DENIED in part**, and Plaintiffs' motion to amend the operative complaint is **DENIED except insofar as it is construed as a motion for the intervention of non-party Wing "Eric" Tong.**

## I.    BACKGROUND

Plaintiffs filed this class action on October 24, 2022. ECF 1. After the action was initially filed, the matter was stayed for a significant amount of time on account of the parties' joint requests· in order to pursue settlement. *See, e.g.*, ECF 7; ECF 11; ECF 13; ECF 17. The complaint was amended on October 16, 2023, nearly a year after the action was originally filed. *See* ECF 23. The Court resolved the pending motion to dismiss in September 2024. ECF 51 (memorandum opinion); ECF 52 (implementing order). A scheduling order was entered in October 2024, ECF 58, which has been modified on several occasions. On February 13, 2026, over a year into discovery, Plaintiffs filed a "final" motion to amend or correct the amended complaint, ECF 99, which the State opposes, ECF 104. As of May 2026, both parties now also request to modify the operative scheduling order in this matter, ECF 91, via the State's contested motion for extension of time, ECF 114. The Court addresses those pending motions now.

## II.    MOTION TO EXTEND DISCOVERY

For over a year, the parties have exchanged written discovery. *See* ECF 114, at 4. Since early 2025, the parties have also engaged in numerous meet-and-confers related to discovery disputes. *See id.* Indeed, five discovery disputes remain outstanding and have been referred to United States Magistrate Judge Gina L. Simms for resolution. ECF 122; ECF 123. Judge Simms

---

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-· generated page numbers at the top of the page.

directed the parties to file a joint status report on their positions on the outstanding disputes by June 22, 2026 to aid in her resolution of the matter, *see* ECF 123, which the parties have done, *see* ECF 125. Pending in the background of these disputes is the State's motion to modify the operative scheduling order, which Plaintiffs consent to in part. *See* ECF 114. Discovery was set to conclude on June 15, 2026, but the Court extended the deadline during the pendency of the State's partially contested modification motion. ECF 124.

Under the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012). The operative scheduling order in this case set the discovery deadline for June 15, 2026, the dispositive pretrial motions deadline for July 22, 2026, and the class certification motion deadline for July 29, 2026, among other deadlines. ECF 91. Both parties agree that *some* extension of discovery is warranted. Accordingly, the question for the Court is not whether the scheduling order should be amended, but to what extent. "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Id.* at 815 (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure Civ. 3d § 1522.2 (3d ed. 2010)).

The State requests that the Court modify the scheduling order to extend the discovery deadline to December 31, 2026, to move the dispositive pretrial motions deadline to January 31, 2027, and to move the class certification motion deadline to February 28, 2027, among other modifications. *See* ECF 114, at 10. In support of its proposed modification, the State advances

3

five primary justifications for why good cause exists in this matter, despite the State's diligence. First, the State notes that it is continuing to "review email[s] from 28 custodians (down from 39)" identified by Plaintiffs, all while Plaintiffs have "asserted that they maintain the right to seek" discovery from "additional individual and group custodians, inclusive of, and beyond, the original 39 identified." *Id.* at 4. The State represents that it is "aiming to produce responsive documents by the end of June for the agreed-upon 28 custodians." *Id.* Second, the State argues that "Plaintiffs still need to substantially supplement their discovery responses" and "[a]bsent receipt" of such responses, the State "is incapable of refining its defenses to Plaintiffs' claims or meaningfully engaging in the deposition process." *Id.* Third, the State argues that "[m]ore than a year after being served with discovery requests for Plaintiffs' medical providers, Plaintiffs finally identified their medical providers but refused to provide medical authorizations necessary for Defendant to promptly obtain medical records." *Id.* at 4–5. The State notes that as a result, it was "forced to subpoena the medical records with a 30-day waiting period to comply with Maryland law," and although two such subpoenas have now been served, Plaintiffs have directed the entities "to disregard the subpoena and await further confirmation." *Id.* at 5. The State asserts that the parties are actively conferring about this matter and argues that it "cannot depose Plaintiffs until it has an understanding of their alleged damages." *Id.* Fourth, the State notes that "Plaintiffs have served Defendant with a 15-page Rule 30(b)(6) deposition notice, which spans the universe of topics, themes and issues." *Id.* (emphasis omitted). The State "maintains" that the deposition notice is "patently overbroad and clearly improper under the Federal Rules of Civil Procedure" and, considering the time it will take to dispute the notice and "prepare the multitude of witnesses necessary to answer even narrowed topics proposed" in the notice, argues that this is an additional ground for a longer extension. *Id.* Finally, the State argues that its proposed modification poses

4

no risk of prejudice to Plaintiffs, who similarly request a significant extension and indeed "stated that they would accept the proposed extension in [the State's] [m]otion if the [p]arties agreed to mediate."[4] *Id.* at 9.

Plaintiffs characterize the State's proposed schedule as "excessive" and argue that it "would reward Defendant's own delay in producing the core discovery necessary for expert analysis and class certification." ECF 116, at 9. They primarily take issue with the State's proposal to push class certification to February 2027 "without imposing firm deadlines for Defendant to complete core discovery." *Id.* at 2. But from the Court's perspective, it is Plaintiffs' proposed schedule that would remove firm deadlines for discovery. Plaintiffs request to set the class certification motion deadline on October 27, 2026, to tie the discovery deadline to 90 days after the class certification ruling, and to set the pretrial dispositive motions deadline to 60 days after the close of discovery. *See id.* at 9. Under Plaintiffs' proposed schedule, Rule 26(a) and (e) disclosures would also be completed by October 13, 2026. *See id.* Plaintiffs contend that their proposal allows the class certification motion to "proceed on a complete record," but without forcing "all remaining fact discovery and dispositive-motion practice . . . to proceed on a compressed schedule before the Court determines whether and how the case will proceed on a class-wide basis." *Id.* at 8.

In rebutting the State's proposed schedule, Plaintiffs argue it is the State's delay in producing responsive emails from custodians that has "frustrated Plaintiffs' ability to complete expert analysis and prepare class-certification briefing within the existing schedule." *Id.* at 4. Plaintiffs further argue that they have "already diligently and repeatedly supplemented their

---

[4] Should the parties wish to refer the case to a U.S. Magistrate Judge for mediation, the parties are directed to alert the Court as soon as practicable when they believe such a referral would be useful.

discovery responses" six times, and they contend that some of the State's responses "remain materially deficient." *Id.* at 6. In response to the State's point about medical provider subpoenas, Plaintiffs state that they have "withdrawn their objection based on 'garden variety' emotional distress damages" and "proposed a reasonable confidentiality procedure that permits collection of the records while preserving the parties' ability to confer regarding designation and use," rather than refusing production altogether. *Id.* at 6 n.5. Finally, Plaintiffs explain that their mediation proposal was an attempt to conserve judicial and party resources, and they argue that such a proposal should not be construed "as evidence that Plaintiffs would suffer no prejudice from Defendant's requested schedule." *Id.* at 7.

Having considered both parties' positions at length, the Court concludes that the State has persuasively explained why the deadlines in the operative scheduling order cannot reasonably be met despite its diligence in litigating this matter. However, the Court is also sympathetic to Plaintiffs' concerns about how long this action has been pending. Accordingly, the Court will forge a middle path and adopt the following schedule:

| | |
|---|---|
| September 21, 2026: | Plaintiffs' Rule 26(a)(2) disclosures |
| October 19, 2026: | Defendant's Rule 26(a)(2) disclosures |
| October 30, 2026: | Plaintiffs' rebuttal Rule 26(a)(2) disclosures |
| November 6, 2026: | Requests for admission |
| November 16, 2026: | Rule 26(e)(2) supplementation of disclosures and responses |
| November 30, 2026: | Discovery deadline; submission of status report |
| December 14, 2026: | Class certification motion deadline |
| January 11, 2027: | Dispositive pretrial motions deadline |

6

The above schedule significantly lengthens discovery while avoiding pushing the class certification motion deadline far into 2027, which Plaintiffs strongly oppose. As both parties observe, significantly lengthening discovery is necessary here, especially because several discovery disputes remain outstanding. But given the amount of time this case has already been pending, the Court will not tie the close of discovery to an imprecise future date, especially considering Plaintiffs have not identified what discovery they would seek after a class certification ruling.[5] A fulsome record upon which to consider class certification is ordinarily necessary and preferable. *See Nelson*, 336 F.R.D. at 126. The parties shall complete discovery by November 30, 2026. Further extensions are not likely to be granted unless the parties jointly agree that an extension is warranted and so move.

## III.   **MOTION TO AMEND**

Plaintiffs, having already filed an amended class action complaint in 2023, now make a "final" motion for leave to amend or correct their amended complaint. ECF 99. Specifically, Plaintiffs argue that good cause exists to amend the operative complaint "to incorporate new factual developments and two additional named plaintiffs and putative class representatives." ECF 99-1, at 2. "Plaintiffs also seek to revive the 42 U.S.C. § 1983 claims based on violations of § 1981

---

[5] It is "common for class actions" to require plaintiffs to file a motion for class certification "promptly after discovery and before the dispositive motion deadline." *Nelson v. Warner*, 336 F.R.D. 118, 126 (S.D. W. Va. 2020). "Generally, 'bifurcation of discovery is the exception, rather than the rule, and it is clear that in most instances, regular—that is, unbifurcated—discovery is more efficient.'" *Singh v. Lenovo (United States) Inc.*, Civ. No. CCB-20-1082, 2021 WL 1516032, at *1 (D. Md. Apr. 16, 2021) (quoting *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 WL 733393, at *1 (D.S.C. Feb. 24, 2021)). This is especially true after *Wal-Mart Stores, Inc. v. Dukes*, which requires a "rigorous analysis" of whether to certify a class. 564 U.S. 338, 350–51 (2011); *see also Singh*, 2021 WL 1516032, at *4 (declining to bifurcate discovery but explicitly noting that the court was not "ordering that *all* merits discovery be completed prior to the class certification determination" because "it may be efficient to defer some merits discovery where it does not plausibly overlap with any of the Rule 23 certification requirements" but directing counsel to "collaborate and to look to proportionality as their guiding principle" should that situation arise).

and the First and Fourteenth Amendments against" the Individual Defendants that the Court previously dismissed without prejudice in ruling on the prior motion to dismiss, on account of purported new evidence that has emerged in discovery. *Id.* According to Plaintiffs, the proposed amendment will "ensure adequate representation of the full scope of the putative class members' claims" and "address issues raised by Defendant's discovery responses." *Id.* The State opposes the motion for lack of diligence and because of resulting prejudice. *See* ECF 104. As an initial matter, however, the parties dispute which standard should apply to determine whether Plaintiffs may amend their complaint—Rule 15(a)(2) or Rule 16(b)(4). *See* ECF 99-1, at 10–12; ECF 104, at 11–12. The State contends, and the Court agrees, that Rule 16 is necessary to adjudicate Plaintiffs' motion.

While Plaintiffs agree that "courts generally apply Rule 16(b)(4)'s 'good cause' standard when a party seeks to amend after a court-imposed deadline," they contend "that standard should not apply here because there is no operative deadline for amending the pleadings." ECF 99-1, at 10. Plaintiffs point to the fact that "the deadlines set in the parties' initial October 24, 2024 scheduling order" have been superseded several times, and discovery is ongoing. *Id.* Pointing to case law in the District of New Jersey, Plaintiffs argue that "when the scheduling order has been repeatedly extended with involvement and consent by both parties, it would be inappropriate to hold them to the original scheduling order." *Ramos v. Walmart Inc.*, Civ. No. 21-13827, 2025 WL 397001, at *4 (D.N.J. Jan. 31, 2025) (collecting cases), *report and recommendation adopted*, Civ. No. 2:21-13827, 2026 WL 1256290 (D.N.J. May 7, 2026). But Plaintiffs neglect to mention that the cited authority also recognized an understandable "reluctan[ce among courts] to forgo applying Rule 16 when a deadline to amend has long expired." *Id.* (collecting cases).

Regardless, the Fourth Circuit and this Court have long held that "[o]nce the scheduling deadline to file an amended complaint has passed, the moving party must satisfy the two-prong test under Federal Rules of Civil Procedure 15(a) and 16(b)(4) in order for the court to grant leave to amend a pleading." *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 497–98 (D. Md. 2013), *aff'd sub nom. In re Canarte*, 558 F. App'x 327 (4th Cir. 2014); *see also Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 106 (D. Md. 2013).[6] "The moving party must meet the threshold 'good cause' standard of Rule 16(b)(4) before it can satisfy the second prong. If the movant satisfies Rule 16(b)(4), the movant then must pass the test for amendment under Rule 15(a)." *Hawkins*, 955 F. Supp. 2d at 498 (internal citation omitted).

In this case, the original scheduling order, entered on October 7, 2024, set the deadline for moving for joinder of additional parties and amendment of pleadings on November 21, 2024. ECF 58, at 2. That deadline followed the deadline for the initial joint status report and for the parties' conference about discovery of electronically stored information, and it preceded the deadline for any other discovery obligations, such as Rule 26(a) disclosures. *See id.* at 1–2. As that order instructed, the parties had fourteen days to file an initial joint status report, in which they were to include any requests for modification of the initial scheduling order. *Id.* at 1. The parties timely did so, but they did not request modification of the deadline for joinder and amendment of pleadings. *See* ECF 59 (initial joint status report and motion). Plaintiffs characterize the Court's

---

[6] The Fourth Circuit has identified the tension between Rules 15 and 16 before in this context. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("There is tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b)[.]"). The Fourth Circuit has nonetheless endorsed the application of Rule 16 when scheduling order deadlines have passed. *See id.* ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings. This result is consistent with rulings of other circuits.").

9

order modifying the scheduling order as "omitt[ing] any reference to a pleading amendment deadline," ECF 99-1, at 11, but the parties did not request to amend that deadline in their report or proposed order. Stated more accurately, *Plaintiffs* omitted any request to modify the deadline for amendment of pleadings in the initial joint status report despite an explicit opportunity to do so.[7] The Court's "omission" of that deadline in later orders modifying the schedule reflects only that the original deadline remained in effect. *See CBX Techs., Inc. v. GCC Techs., LLC*, Civ. No. JKB-10-2112, 2012 WL 3038639 (D. Md. July 24, 2012) ("A court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril[.]'" (internal quotation marks omitted) (quoting *Potomac Electric Power Co. v. Electric Motor Supply, Inc.*, 190 F.R.D. 372, 376 (D. Md. 1999))). Because the "scheduling deadline to file an amended complaint has passed," Plaintiffs "must satisfy the two-prong test under Federal Rules of Civil Procedure 15(a) and 16(b)(4) in order for the court to grant leave to amend a pleading." *Hawkins*, 955 F. Supp. 2d at 497–98.

Rule 16 governs scheduling, case management, and amendment of pleadings filed beyond the deadline set forth in a scheduling order. *See* Fed. R. Civ. P. 16. As noted above, "[u]nder Rule 16(b)(4), a movant must demonstrate good cause to satisfy the requirement for a modification of

---

[7] That Plaintiffs expressly advised the Court of their intention to seek leave to amend the first amended complaint in the most recent joint motion to modify the scheduling order, *see* ECF 90, at 3 ¶ 13, does not affect the Court's analysis on this point. Such an advisement does not constitute a motion to modify the amendment of pleadings deadline, nor did the Court's subsequent order granting that motion extend the amendment of pleadings deadline set by the initial scheduling order expressly or implicitly. *See* ECF 91; *Crouch v. City of Hyattsville*, Civ. No. DKC-09-2544, 2012 WL 718849, at *2 (D. Md. Mar. 5, 2012) ("Although the scheduling order was modified once more, the deadline for the amendment of pleadings was not altered."); *Wolf v. W.L. Gore & Assocs., Inc.*, Civ. No. MJM-23-280, 2026 WL 547857, at *3 (D. Md. Feb. 24, 2026) ("If the parties intended for the modified Scheduling Orders entered after October 2023 to *suspend indefinitely* the deadline for amendment and joinder, their joint motions and proposed orders should have said as much.").

10

.a scheduling order." *United States ex rel. Schnupp v. Blair Pharmacy*, Civ. No. ELH-17-2335, 2025 WL 2306250, at \*13 (D. Md. Aug. 11, 2025) (collecting cases); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "The touchstone of Rule 16(b)(4)'s good cause requirement is diligence." *Blair Pharmacy*, 2025 WL 2306250, at \*13 (internal quotation marks omitted) (quoting *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020)). "Properly construed, good cause means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *CBX Techs., Inc.*, 2012 WL 3038639, at \*4 (quoting *Potomac Electric*, 190 F.R.D. at 375)).

"In evaluating diligence, courts mainly focus '[on] the timeliness of the motion to amend and the reasons for its tardy submission.'" *Blair Pharmacy*, 2025 WL 2306250, at \*14 (alteration in original) (quoting *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014)). "Specifically, the Court considers whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520. "If, for example, the 'moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial [pleading], then the party' has not acted diligently, and therefore 'cannot establish good cause under Rule 16.'" *Blair Pharmacy*, 2025 WL 2306250, at \*14 (alteration in original) (quoting *Faulconer*, 808 F. App'x at 152). "In contrast, where at least some of the evidence needed for a [party] to prove his or her claim did not come to light until after the amendment deadline, a [party] has good cause for moving to amend at a later date." *Id.* (quoting *Wonasue*, 295 F.R.D. at 107).

As an initial matter, Plaintiffs attempt to argue that the Court already determined Plaintiffs had good cause to amend their complaint under Rule 16 when the Court granted the most recent

11

joint motion to modify the scheduling order. *See* ECF 90 (motion); ECF 91 (order). Plaintiffs point out that they "expressly advised the Court of their intention to seek leave to amend the First Amended Complaint" and that when the Court "subsequently granted that motion in full, extending all case deadlines," "the Court necessarily considered the totality of the circumstances when evaluating 'good cause' under Rule 16(b)(4), including Plaintiffs' stated intention to amend." ECF 99-1, at 20–21 (citing ECF 90, at 3 ¶ 13). This argument has no foundation in fact or law. The Court granted in full the *relief* requested in the *joint* motion for *modification* of the scheduling order. *See* ECF 91. The advisement Plaintiffs reference was neither a request for relief nor joint. The Court did not acknowledge, recognize, or accept that advisement in its modification order, and so that order has no bearing on its present analysis under Rule 16. *See supra* note 6; *cf. Crouch*, 2012 WL 718849, at *2. The Court thus considers whether Plaintiffs were diligent in seeking their proposed amendments.

## A.    New Named Plaintiffs

As mentioned, Plaintiffs' proposed amendment would add or permit the intervention of former officers, Analisse Diaz ("Diaz") and Wing "Eric" Tong ("Tong") (together, the "Proposed Plaintiffs"), as named plaintiffs and putative class representatives. ECF 99, at 1. Plaintiffs note that the State "raised for the first time in the discovery process issues regarding the purported inadequacy of Officers Tribue and Dunlap to represent class members who suffered adverse employment actions different from the adverse actions these Plaintiffs suffered." ECF 99-1, at 22. "While the Parties conferred on this point in discovery in March 2025 and beyond," Plaintiffs assert that they "acted diligently by obtaining evidence from putative class members who had suffered different forms of adverse employment action, including, but not limited to, Officer Tong." *Id.* Defendants point out that Plaintiffs had this knowledge by mid-2025, and if they "wished to be diligent in remedying the deficiencies in their chosen class representatives, they

could have done so at that time." ECF 104, at 14–15. Regardless, Defendants argue that "Plaintiffs have failed to acknowledge that they required no discovery at all from Defendant to know, understand, and appreciate the claims made by both Diaz and Tong." *Id.* at 15. Instead, Defendants point out that Plaintiffs have long had access to the allegations Diaz and Tong had to offer the complaint.

"In the class action context, plaintiffs can show sufficient diligence if they move to amend once they become aware of the 'need to fill a class representative gap.'" *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 350 (D. Conn. 2019) (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1–2 (S.D.N.Y. 2017)). Defendants assert, and Plaintiffs do not dispute, that "[t]he 'discovery' that Plaintiffs state caused them to consider the so-called inadequacy of Tribue and Dunlap as representatives happened by mid-2025." ECF 104, at 14. Specifically, Defendants raised the potential issue that the current named Plaintiffs "cannot adequately represent class members who have been wrongfully terminated" because the named Plaintiffs were not subject to that adverse action. *See* ECF 99-1, at 27–28. Yet, despite learning of that issue in mid-2025, Plaintiffs did not file the motion to amend until February 13, 2026. *See* ECF 99.

Plaintiffs' counsel has represented Diaz and Tong individually since 2022, and Diaz was in fact named as a class representative in both the original and first amended complaint before the claims she asserted were dismissed. *See* ECF 99-1, at 3 ("Because Plaintiff Diaz asserted only § 1983 claims in the FAC, she remained in the case solely as a putative class member pending revival of § 1983 class claims."); ECF 104, at 15. In June 2025, Plaintiffs listed Diaz and Tong, along with roughly 40 additional potential plaintiffs in their answers to interrogatories as contactable through counsel. *See* ECF 104-2, at 5. Indeed, in August 2022, Plaintiffs' counsel

noted an appearance on behalf of Tong when he filed an EEOC charge, which contained virtually identical allegations as Plaintiffs seek to add to the claims in this case now. *See* ECF 104-4, at 2 (EEOC charge listing Michal Shinnar as charging party's attorney); ECF 104-5, at 2–8 (EEOC charge of discrimination). For example, in the proposed second amended complaint, Plaintiffs assert that "Sergeant Christopher Cole, and another White trooper, frequently referred to Plaintiff Tong as 'Jet Li,' 'Jackie Chan,' and/or 'Green Hornet,' or words to that effect." ECF 99-4, at 66 ¶ 251. But Tong made these exact allegations in his 2022 EEOC Charge. *See* ECF 104-5, at 3 ("Sergeant Christopher Cole, and another white trooper, formerly-Corporal Jonathan Larsen, always said to Mr. Tong: 'Hey, Jackie Chan, come here;' 'Hey, Jet Li, come here; and/or, 'Hey, Green Hornet, come here;' or words to that effect.").

Plaintiffs nevertheless contend they acted diligently, citing a variety of out-of-district precedent in support. *See* ECF 99-1, at 22–23 (citing *Woods v. Google LLC*, No. 11-CV-01263-EJD, 2018 WL 4030570 (N.D. Cal. Aug. 23, 2018); *Vision Constr. Ent Inc v. Argos Ready Mix LLC*, No. 3:15CV534-MCR-HTC, 2020 WL 6749040 (N.D. Fla. May 20, 2020)). For example, Plaintiffs point out that the Northern District of California concluded that after learning of a defendant's intent to raise an adequacy issue, "four months [was] a reasonable span of time to find a new class representative, research his claims, and draft a motion to amend as well as an updated complaint." *Woods*, 2018 WL 4030570, at *8. But unlike *Woods*, Plaintiffs here did not need to engage in a hasty search for a new named plaintiff, because Plaintiffs' counsel already represented that individual. Although the Court would ordinarily agree with Plaintiffs that "the fact that Plaintiffs' counsel represents certain other putative class members does not mean named Plaintiffs possessed facts necessary to plead" certain claims, ECF 107, at 15, here the representation occurred in the context of EEOC proceedings involving allegations directly related to this suit.

14

Even if such representation had not existed, it reflects a lack of diligence that Plaintiffs waited until January 2026 to obtain declarations from Diaz and Tong when Plaintiffs were aware of the State's argument as to "the so-called inadequacy of Tribue and Dunlap as representatives happened by mid-2025." ECF 104, at 14, 19; *cf. Vision Constr. Ent Inc.*, 2020 WL 6749040, at *3 ("Notably, at the class certification hearing, Vision's counsel alerted the Court to its desire to request leave to amend if this issue were decided against it. Then, promptly after the ruling, counsel requested a deadline for briefing the argument before the Court entered a new scheduling order, and Vision filed the instant motion within the time allotted by the Court."); *Gardner v. Flagstar Bank, FSB*, Civ. No. 20-12061, 2023 WL 4844373 (E.D. Mich. Mar. 23, 2023) ("Gardner filed her Motion for Leave to File Second Amended Class Action Complaint only two months . . . after she became aware of Flagstar's intention to assert defenses specific to her claims and distinct from the potential class."); *Gould v. Motel 6, Inc.*, Civ. No. 09-8157, 2011 WL 759472, at *3–4 (C.D. Cal. Feb. 22, 2011) (permitting amendment where plaintiffs took "over sixteen months to find the new plaintiff . . . despite knowing for months that Defendants would challenge the adequacy of the current plaintiffs" where plaintiffs had to engage the services of an investigator to find a new plaintiff). That "Plaintiffs had no obligation to obtain, prior to the November 2024 amendment deadline, sworn testimony from every putative class member," *see* ECF 107, at 16, has no bearing on the Court's consideration of whether Plaintiffs acted diligently to amend their complaint *since* that deadline expired, and since Plaintiffs learned of the potential adequacy issue regarding their current class representation. Because the Court concludes that Plaintiffs were not diligent in seeking to add new class representation, it will deny the Plaintiffs' motion in this respect, although it considers separately Plaintiffs' alternative request to permit the Proposed Plaintiffs to intervene below. *See infra* Section III.C.

**B.**    **Re-Assertion of § 1983 Claims Against Individual Defendants**

Plaintiffs argue that they "also acted diligently in marshalling facts concerning Defendants Pallozzi, Jones, Butler, and Hock's involvement, and are moving to reinstate the § 1983 claims against these individuals promptly after obtaining a viable evidentiary basis to support them." ECF 99-1, at 24. Plaintiffs assert that they obtained discovery about the personal involvement of the Individual Defendants "as recently as January 2026." *Id.* at 25. Defendants counter, however, that "none of Plaintiffs' new allegations in the proposed second amended complaint as to the Individual Defendants and two 'new' plaintiffs are based on facts found in Defendant's discovery." ECF 104, at 17. Rather, Defendants argue, the new allegations are based on interviews and statements from Diaz and Tong. *See id.* And to the extent that the proposed second amended complaint relies on facts produced in discovery, Defendants contend that such facts "are of minimal significance and were made available to Plaintiffs early in discovery," in 2025. *Id.* at 17–18.

Plaintiffs respond that the State's "delay argument incorrectly examines individual facts in isolation rather than viewing them in totality." ECF 107, at 13. Although Plaintiffs acknowledge the production of some relevant records in as early as April of 2025, they contend that "merely identifying MSP's hierarchy is insufficient to plead supervisory liability," as the Court's former memorandum opinion made clear. *Id.* Accordingly, "Plaintiffs had to identify specific allegations showing a pattern of systemic and widespread abuses, and/or direct conduct attributable to former Superintendents Butler, Jones, and Pallozzi, and former Chief of Staff Hock before seeking to revive the claims." *Id.* Plaintiffs contend that they required time to analyze complex discovery to determine that the "cumulative effect of information obtained in late 2025 and early 2026 . . . [was sufficient] to plead widespread patterns with the specificity required by the Court's ruling." *Id.* at 14.

The Court's prior opinion dismissed without prejudice the claims against the Individuals Defendants because Plaintiffs alleged only "broad conclusory assertions mirroring the legal standard for supervisory liability" in the first amended complaint. ECF 51, at 12. The Court explained that "more than an assertion that the [I]ndividual Defendants were indeed the supervisors of the relevant actors" was required to plead supervisory liability—"allegations regarding the actual actions (or inaction) of any of the [I]ndividual Defendants" were necessary. *Id.* Plaintiffs identify several portions of the proposed second amended complaint that purport to add such allegations, *see* ECF 99-1, at 19, but the additions do not appear to turn on information that was recently adduced in discovery.

Rather, as Defendants note, the new allegations are often denoted as "based on information and belief" and "derived from interviews with and statements from Diaz and Tong who have been clients of Plaintiffs' counsel for many years." ECF 104, at 17; *see also, e.g.*, ECF 99-4, at 57 ¶ 198 ("Plaintiff is informed and believes that Defendants Pallozzi, Jones, and/or Butler participated in, ratified, and/or knew and/or should have known about this discriminatory and/or retaliatory conduct."). And to the extent that Plaintiffs seek to found these allegations on what they have learned in discovery about the Individuals Defendants' express authority for assignment and reassignment, for example, *see, e.g.*, ECF 99-4, at 18 ¶ 49, the authority and roles of Individual Defendants "as described in disciplinary matrices, workplace policies, and . . . organizational charts [ ] were produced almost a year ago in April and May 2025." ECF 104, at 18.

To be sure, the slow pace at which this case has proceeded is not necessarily attributable to "the dilatoriness [of] the plaintiffs." *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir. 1987). But much unlike *Island Creek Coal*, which Plaintiffs cite for support, it was not the case here that no real scheduling order "fixing limits for discovery was ever entered." *Id.*

Nor was it "only as a result of this discovery . . . that the basis for" several of the proposed amendments "was discovered by the plaintiffs." *Id.* It is not clear to the Court why "[t]he significance of information obtained during 2025 only became apparent when multiple categories of information were analyzed together," ECF 107, at 13, when Plaintiffs had access to information it sought from Proposed Plaintiffs in 2026 since at least 2022. Although the Court agrees that "plaintiffs were entitled to a reasonable time to investigate through other sources the information they had secured," *Island Creek Coal*, 832 F.2d at 279, it concludes that waiting, at minimum, nearly a year to seek amendment after learning of such information was "not compatible with a finding of diligence." *CBX Techs., Inc.*, 2012 WL 3038639, at *4 (quoting *Potomac Electric*, 190 F.R.D. at 375)); *cf. Jackson as Next Friend of T.G. v. Balt. Curriculum Project, Inc.*, Civ. No.. SAG-20-2433, 2022 WL 2315736, at *3 (D. Md. June 27, 2022) (concluding that a plaintiff did not act with diligence where she filed a motion for leave to amend her complaint "almost nine months after the deadline provided in the Scheduling Order, and at least three months after her discovery of new facts"). "And where a moving party fails to demonstrate good cause under Rule 16(b), the Court need not address the remaining Rule 15(a) factors." *Jackson as Next Friend of T.G.*, 2022 WL 2315736, at *3. Accordingly, the Court will deny Plaintiffs' motion to amend for lack of diligence pursuant to Rule 16.

### C. Plaintiff Intervenors

In the alternative, Plaintiffs ask the Court to permit "Diaz and Tong to intervene as of right under Rule 24(a)(2) or permissively under Rule 24(b)." ECF 99-1, at 27. The State fails to directly address Plaintiffs' argument that Diaz and Tong should be permitted to intervene in its opposition. *See* ECF 104. The Fourth Circuit generally favors allowing parties to intervene. *See Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (noting that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with

18

efficiency and due process"). As an initial matter, however, the Court concludes that Diaz is not a proper moving party for such a motion. *Cf. Levitt v. Fax.com*, Civ. No. WMN-05-949, 2008 WL 11509441 (D. Md. July 16, 2008) ("Plaintiff is not a proper moving party for a motion to intervene in a case in which he is already a party."). Diaz was previously a plaintiff in this lawsuit, but the counts she asserted were dismissed by the prior opinion and order resolving the motion to dismiss. *See* ECF 51; ECF 52. And as explained above, the Court has concluded that Plaintiffs may not, pursuant to Rule 16, amend the complaint to reintroduce those claims now. *See supra* Section III.A. Plaintiffs cannot use a motion to intervene to sidestep the Court's rulings on the motion to dismiss and motion to amend.

As for the viability of Tong's motion to intervene, it is worth noting that the initial scheduling order included a deadline for the joinder of additional parties, which fell on the same day as the deadline for amendment of pleadings. *See* ECF 58, at 2 (setting November 21, 2024 as the deadline to move for joinder of additional parties). No party moved to modify that deadline, as discussed. The commonality of the words "joinder" and "intervention" might lead a lay observer to wonder why Rule 16 does not govern the analysis here. The reason is simply that what is sought here is *intervention*, not joinder. "Intervention is distinct from joinder," the former being "a way that existing parties can bring a third party into a lawsuit." *In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 974 F.3d 228, 234 (3d Cir. 2020). Whereas "joinder is begun by the existing parties or the court," intervention "involves a *nonparty*'s motion to enter a suit to protect its interests, whether or not the existing parties want its company." *Id.* The individual seeking to join this suit as a named plaintiff is Tong, a nonnamed member of the putative class. A "nonnamed class member is [not] a party to the class-action litigation before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (cleaned up) (quoting *Smith v. Bayer Corp.*,

19

564 U.S. 299, 313 (2011)). Accordingly, although the lines have been somewhat blurred by the way the motion and request have been presented, the Court will nonetheless construe the request as Tong's motion to intervene in this putative class action.

Despite the fact that this motion appears to be premature since it is filed prior to the class certification stage,[8] the Court ultimately agrees that it *may* be the case that the current named Plaintiffs do not adequately represent the interests of putative class members for the reason indicated by the State. Namely, the named Plaintiffs were not terminated without restatement during the class period, meaning that those plaintiffs could be inadequate to represent class members who suffered that particular adverse action. *See* ECF 99, at 2 ¶ 2. Under those circumstances, it appears proper that the Court analyze whether Rule 24 compels and/or allows Tong's intervention. *See Lantz v. Am. Honda Motor Co.*, Civ. No. 06-5932, 2007 WL 2875239, at *6 (N.D. Ill. Sept. 27, 2007) (permitting intervention prior to class certification where "the current named Plaintiffs may not adequately represent the interests of putative class members"). However, the Court "does caution that '[e]ach additional plaintiff and putative class member brings with it new questions of fact,' which potentially 'lessen [s] the chances for class certification.'" *Id.* at *7 (quoting *Coburn*, 218 F.R.D. at 610).

---

[8] Motions made at this stage do not appear overly common, as far as this Court can determine. *See Coburn v. DaimlerChrysler Servs. N. Am., L.L.C.*, 218 F.R.D. 607, 610 (N.D. Ill. 2003) (considering such a motion as "somewhat premature because this Court has not certified a class"). Perhaps relatedly, the Fourth Circuit has observed that the Supreme Court's establishment of a rule "that the commencement of a class action equitably tolls the running of the statute of limitations for proposed class members' claims until the class action is denied . . . discourages class members from intervening in the action until 'after the Court has found the suit inappropriate for class action status,' when no class member could any longer reasonably rely on the class representative." *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 210 (4th Cir. 2006) (quoting *American Pipe & Construction v. Utah*, 414 U.S. 538, 553 (1974)).

Federal Rule of Civil Procedure 24 establishes the circumstances under which a party may intervene in a lawsuit, both as a matter of right and permissively. *See* Fed. R. Civ. P. 24(a)–(b). With respect to the former, "[o]n timely motion, the court *must* permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added). With respect to the latter, likewise "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1).

Plaintiffs argue that Tong should be permitted to intervene as a matter of right or, in the alternative, permissively. *See* ECF 99-1, at 26–29. It appears obvious to the Court, and Defendants have not disputed, that at a minimum Tong has a claim that shares a common question of law or fact with the main action. *See generally* ECF 99-3. The Court thus assesses whether Tong's motion is timely under Rule 24 which is an inquiry distinct from the diligence inquiry driving the Court's Rule 16 analysis above. "Timeliness is a central consideration when deciding a motion to intervene, and a movant's failure to seek intervention in a timely manner is sufficient to justify denial of such motion." *Id.* In determining whether a motion to intervene is timely, a district court is to weigh three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989)). "District courts are accorded broad discretion in deciding the timeliness of a motion to intervene after assessing all the relevant circumstances." *Scott v. Bond*,

21

734 F. App'x 188, 191 (4th Cir. 2018) (citing *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)). Although this matter has been pending for years, in the context of a putative class action in which discovery is still ongoing and where intervention typically occurs after the class certification stage, the Court does not find that the stage of this suit weighs against finding the motion as timely.

Another "consideration in reviewing a motion to intervene is whether the existing parties will suffer prejudice if the motion is granted." *Id.* (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)). Although not directly in response to the motion for intervention, Defendants argue that they will be prejudiced by the addition of a new plaintiff so late in the case. *See* ECF 104, at 22. However, the case remains in the midst of discovery and depositions have not yet begun. *See* ECF 99-1, at 28. As Plaintiffs observe, Tong has "a significant interest in this litigation, [he] challenge[s] the same disciplinary, promotional, and investigative systems already at issue in this case, and [his] claims arise from the same alleged policies and practices." ECF 107, at 18. Although Tong's addition may introduce new arguments in future dispositive motions, the ordinary effort of litigating a case does not ordinarily constitute substantial prejudice. *See Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, Civ. No. ELH-16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017) (quoting *Nat'l Recovery Agency v. AIG Domestic Claims, Inc.*, No. 4:05-CV-0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006)). Accordingly, Tong will be permitted to intervene as a named plaintiff in the putative class action.

That leaves the matter of what pleading Tong will be permitted to file as an intervenor. Rule 24(c) typically requires that a motion for intervention is "accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Because this motion was styled as a motion to amend, an accompanying pleading was attached and sets out the claims for which Tong seeks intervention, but it is not suitable for use as an intervenor complaint.

22

That technical issue presents no barrier to granting the motion to intervene, as "[t]he Fourth Circuit rejects strict application of Rule 24(c), holding that 'the proper approach is to disregard non-prejudicial technical defects.'" *Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996) (quoting *Spring Construction Co., Inc. v. Harris*, 614 F.2d 374, 377 (1980)). However, consistent with this opinion, Tong will be required to file a separate intervenor complaint within thirty (30) days of the issuance of this decision. Tong's pleading may not contravene the Court's above decision otherwise denying Plaintiffs' motion to amend.

## IV.   **CONCLUSION**

For the foregoing reasons, the State's motion for modification of the operative scheduling order is **GRANTED in part and DENIED in part**, and Plaintiffs' motion is **DENIED except insofar as it is construed as a motion for the intervention of Tong.**

A separate implementing order will issue.

Dated: June 26, 2026

/s/
Brendan A. Hurson
United States District Judge

23